[Cite as *State v. Morgan*, 2013-Ohio-122.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellee              :              C.A. CASE NO.    25023

v.                                     :              T.C. NO.    10CR2883

MICHELE MORGAN                         :              (Criminal appeal from
                                                      Common Pleas Court)

    Defendant-Appellant             :

                                       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____18th____ day of _____January_____, 2013.

. . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W.
Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BAHJAT M. ABDALLAH, Atty. Reg. No. 0078504, 15 West Fourth Street, Suite 100,
Dayton, Ohio 45402
    Attorney for Defendant-Appellant

MICHELE MORGAN, 8521 Lyons Gate Way, Apt. A, Miamisburg, Ohio 45342
    Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  Michele Morgan was convicted of theft in violation of R.C.

2913.02(A)(2), a fourth-degree felony, after a bench trial in the Montgomery County Court of Common Pleas. The court sentenced her to five years of community control, which included the requirement that she pay restitution of $8,657.62 to her former boyfriend, Rodney Rooks.

{¶ 2} Morgan's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that after thoroughly examining the record and the law, he found no potentially meritorious issues for appeal. Counsel set forth three potential assignments of error, namely (1) that the verdict was based on insufficient evidence and was against the manifest weight of the evidence, (2) that there was insufficient evidence to support the amount of restitution ordered, and (3) that the verdict and judgment entry are defective, because they improperly refer to the offense as "grand theft ($5000)."

{¶ 3} By entry, we informed Morgan that her attorney had filed an *Anders* brief on her behalf and granted her 60 days from that date to file a pro se brief. Morgan requested and was granted an extension of time in which to file a pro se brief. However, to date, no pre se brief has been filed.

{¶ 4} Appellate counsel first raised that Morgan's conviction was based on insufficient evidence and was against the manifest weight of the evidence. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When

reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 5} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 6} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest

weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 7} At trial, the State presented substantial evidence that Morgan used Rooks's checking account to pay numerous bills between June 2009 and July 2010. The payments included fourteen checks to the apartment complex where Morgan lived for Morgan's rent, as well as several telephone and utility bills; the payments totaled $8,657.62. All of the payments were made through the bank's Online Bill Payment service. The telephone and utility payments were electronic fund transfers; Morgan's rent payments were written checks produced by the bank and sent by the bank to the apartment complex. Rooks testified that he did not establish online access to his checking account, and he did not make online payments. He further stated that Morgan did not have permission to use his account to pay her bills. After Rooks notified the police, Morgan sent several text messages to Rooks, in one of which she stated that she would pay back any money that she owed to Rooks.

{¶ 8} While testifying on her own behalf, Morgan did not contest that she used money from Rooks's checking account to pay her bills. She argued, however, that Rooks agreed to use his checking account to help her pay her bills on time, and that she, in return, provided cash to Rooks. Morgan stated that she believed the theft charges were made by Rooks in retaliation for Morgan's breaking up with him.

{¶ 9} Various documents were offered into evidence by the State, including the checks made out to Morgan's apartment complex from Rooks's checking account, Rooks's bank statements, a transcript of text messages from Morgan to Rooks, and Morgan's written statement to the Miami Township Police Department. Morgan offered three exhibits

consisting of telephone records, Facebook messages between Rooks and her, and pay stubs from her employment.

{¶ 10} Upon review of the entire record, we find no arguable claim that Morgan's conviction was based on insufficient evidence or against the manifest weight of the evidence. There was substantial evidence of Morgan's use of Rooks's money to pay bills during 2009 and 2010, and the only issue was whether Rooks had agreed to allow Morgan to use his checking account for that purpose. Rooks testified that Morgan used his checking account without his consent. Although Morgan asserted that she and Rooks had an agreement that allowed her to pay her bills from Rooks's account, the trial court specifically found that it "didn't find [Morgan's] testimony to be credible at all." While rendering its verdict, the court told Morgan, "Nothing that you say makes sense. You have different and conflicting versions of almost everything you said." We defer to the trial court's findings of credibility. Appellate counsel's first potential assignment of error is frivolous.

{¶ 11} Appellate counsel next raises that there was insufficient evidence to support the amount of restitution ordered. Counsel notes that "the only issue as it pertains to restitution is whether or not the Court finds any 'set-off' arguments made by Appellant Morgan to be credible." Rooks testified that the amount of money that Morgan used to pay her bills totaled $8,657.62, and the State offered bank records and checks to substantiate that testimony.[1] Morgan did not dispute that payments totaling $8,657.62 were made from

---

[1] The State's amended bill of particulars stated that Morgan stole $8,416.62, which was $241 less than the amount asserted by the State at trial. However, this discrepancy is due to a miscalculation as to the total value of the 14 checks made from Rooks's checking account to Morgan's apartment complex. The amended bill of particulars stated that the 14 checks totaled

Rooks's account to pay her bills. Morgan testified that Rooks was reimbursed for the funds that were used to pay her bills, but there was no documentary evidence to support that assertion and the trial court did not find Morgan's testimony to be credible. Based on the record, there was sufficient evidence to support the trial court's restitution order, and any claim to the contrary is frivolous.

{¶ 12} Finally, appellate counsel claims that the trial court's verdict form and judgment entry are erroneous, because they refer to Morgan's offense as "grand theft ($5000)."

{¶ 13} Morgan was charged in February 2011 with theft, in violation of R.C. 2913.02(A)(2) (theft beyond the scope of consent). At the time of the offense, R.C. 2913.02(B)(2) stated that a violation of R.C. 2913.02 was a felony of the fourth degree if the value of the property or services stolen was $5,000 or more, but less than $100,000. Due to 2011 Am.Sub. H.B. 86, effective September 30, 2011, theft is now a fourth-degree felony if the value of the property or services stolen is $7,500 or more, but less than $150,000.

{¶ 14} In H.B. 86, the General Assembly expressly stated when the amendments were to be applicable: "The amendments * * * apply to a person who commits an offense specified or penalized under those sections on or after the effective date of this section and to a person to whom division (B) of section 1.58(B) of the Revised Code makes the amendments applicable." *See State v. Wilson*, 2d Dist. Montgomery No. 25057, 2012-Ohio-5912, ¶ 7. Moreover, under R.C. 1.58(B), "[i]f the penalty, forfeiture, or

---

$5,542; the checks (which were offered into evidence as State's Ex. 1) actually totaled $5,783.

punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended." *See Wilson* at ¶ 8. Morgan's case was tried in December 2011, and she was sentenced in January 2012. Accordingly, Morgan was entitled to any benefits provided by the amendment to R.C. 2913.02 in H.B. 86.

**{¶ 15}** The State proved at trial that Morgan committed theft of $8,657.62, and when orally informing Morgan of its verdict, the trial court found Morgan "guilty of one count of grand theft, a felony of the fourth degree, which would continue to be a fourth degree felony under the new statute."[2] When asked by the court if that statement was correct, defense counsel concurred. Because Morgan was entitled to be sentenced under H.B. 86, the trial court incorrectly referenced $5,000 in its verdict and judgment entry as the minimum value for fourth-degree felony theft. However, this is an apparent typographical error with no consequence to the validity of Morgan's conviction, considering that Morgan committed a fourth-degree felony under both former law and H.B. 86. We find no potentially meritorious claim based on the trial court's reference to the former minimum value of $5,000 in its verdict form and judgment entry.

**{¶ 16}** Pursuant to our duty under *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), we have conducted an independent review of the entire record, and we have found no potential assignments of error having arguable merit.

**{¶ 17}** The judgment of the trial court will be affirmed.. . . . . . . . . .

---

[2] Although the trial court did not specify the value of the stolen property in its verdict, the record establishes that the court found Morgan guilty of committing theft in the amount of $8,657.62.

FAIN, P.J. and DONOVAN, J., concur.

Copies mailed to:

Kirsten A. Brandt
Bahjat M. Abdallah
Michele Morgan
Hon. Mary Katherine Huffman